**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **NO. 5:23-CR-00034-DCR-MAS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MALACHI EVANS,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## DETENTION OPINION & ORDER

The Indictment charges Defendant Malachi Evans ("Evans") with a plethora of drug and firearm charges.  [DE 1].  The United States properly moved for detention under 18 U.S.C. § 3142(f)(1)(B), (C), and (E).  [DE 10].  After considering the record—including testimony, proffer, and arguments—the Court shall grant the United States' motion and detain Evans pending trial.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

According to the Indictment [DE 1], the Pretrial Services Report ("PSR") [DE 16], as well as the testimony of Cordayja Ahumada ("Ahumada") and DEA Special Agent Michael Trueblood ("Trueblood"), the charges in this matter concern activity in and around late October 2021.  Over the course of several days, the DEA conducted four controlled purchases from Evans.  The drugs involved in those controlled purchases were methamphetamine and acetylfentanyl.  The amounts at issue,

1

respectively, were over 175 grams and over 280 grams of narcotics. The DEA lab returned a purity on the acetylfentanyl of ninety-eight percent. Additionally, when he was arrested following the fourth and final controlled purchase, Evans was in possession of a loaded Glock pistol. Evans was arrested and initially charged by state authorities in Clark County.

Although this was Evans's first criminal charge at the age of 20, his time on release pending these charges did not go well. First, Clark County Pretrial Services complained that Evans failed to properly charge and maintain the charge on his electronic monitoring equipment. A violation was issued for this failure and an arrest warrant was served. Eventually, the violation was dismissed. Second, in January 2023, Evans absconded from supervision. He traveled north on I-75 before ultimately cutting off the electronic monitoring device outside of Toledo, Ohio. Another violation and arrest warrant were issued.

Evans was not located until April 4, 2023, when he was arrested in Nicholasville, Kentucky following a traffic stop. There, a routine traffic stop occurred on a vehicle in which Evans was a passenger. After the officer smelled marijuana, officers conducted a search. Evans produced a bag of suspected marijuana from his right front pocket. Evans provided a false identity and was placed in custody while a search of the vehicle was conducted. Officers located in a backpack in the rear seat of the car a can of WD-40 with a false bottom. Inside, officers found several grams of suspected methamphetamine. When officers removed Evans from the police vehicle

2

to conduct a full search of his person, Evans dropped another small bag of methamphetamine.  Eventually, Evans was properly identified and arrested.

## II.   LEGAL FRAMEWORK

Given the charges, a detention presumption arises under the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, ("BRA") as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A).   Accordingly, a defendant carries a "burden of production" to overcome the presumption by offering "at least some evidence" that he is neither at risk of nonappearance nor endangering the community.  *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).  The production burden "is not heavy," and the Government retains the ultimate burden of persuasion.  *Id.*  If the defendant fails to rebut the presumption, he must be detained.  Even if the defendant rebuts the presumption, the presumption remains a factor in determining detention.  *Id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

However, if a defendant rebuts the presumption of detention, the burden shifts back to the United States to persuade the Court that detention is nevertheless warranted.  Detention, based on danger, must rest on facts supported by clear and convincing evidence. 18 U.S.C. § 3142(f).  A flight-based (or, more accurately, nonappearance-based) detention decision must rest on facts supported by a preponderance of evidence.  *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-82-DCR, 2006 U.S. Dist. LEXIS 49661, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006).  Further, almost any conditional release

ultimately depends on a court's assessment of a defendant's good faith intentions and predicted compliance with conditions imposed. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (evaluating predicted good faith compliance as critical release component).

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The hearing is informal, and the Court may consider a wide range of proof, weighing the evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291 [published in full-text format at 1998 U.S. App. LEXIS 13553], 1998 WL 381686, at *1 (6th Cir. June 22, 1998). The nature and quality of proof impacts its probative value and weight in the detention calculus. The § 3142(g) factors guide the analysis.[1]

---

[1] The subsection directs the Court to balance the following:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including--
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

### III.   ANALYSIS

The Court conducted a detention hearing and afforded both sides all procedural rights outlined in the BRA. [DE 14].  Below, the Court shall consider all testimony, proffer, and arguments from the parties to assess whether Evans has overcome the presumption of detention and, if so, whether the United States met its burden of persuasion that the § 3142 factors demand detention.

### A.   RISK OF NONAPPEARANCE

As a threshold matter, the Court finds that Evans overcame the presumption as to his risk of nonappearance.  As noted in the PSR and by counsel during the detention hearing, Evans has little criminal history with long-standing ties to this community.  [DE 16].  Although born in Detroit, Michigan, Evans has lived in Lexington, Kentucky since the age of 13 or 14.  He has siblings who live in this community.  Evans attended school through high school and worked, albeit minimal, in the Lexington area.  He has family, an older brother who just completed pretrial diversion, who will take him in and support him during this time.  His future sister-in-law, Ahumada, indicated she would be home with him most of the time as she is attending school and rearing her two-year old child.

The United States countered with several points.  First, Congress has attached a presumption to those types of crimes, such as drug trafficking, which indicate a "strong probability" that the perpetrator will flee.  *United States v. Downsbrough*, No. 3:13-CR-61, 2013 WL 2447858, at *1 (E.D. Tenn. June 5, 2013) (citing *United States v. Stone*, 608 F.3d 939, 947 n. 6 (6th Cir. 2010)).  "The presumption in favor of detention does not vanish simply because a defendant comes forward with evidence

to rebut it. Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class.'" *United States v. Lattner*, 23 Fed. App'x. 363, 364, (6th Cir. 2001) (citing *United States v. Martir*, F.2d 1141, 1144 (2d. Cir. 1986)).    Thus, the very charges Evans faces portends a risk of nonappearance.

Second, Evans has never held a stable job or employment, although the United States recognizes Evans young age. *United States v. Stidham*, No. 3:10-CR-79, 2010 WL 2639925, at *3 (E.D. Tenn. June 25, 2010) (finding that a defendant's long unemployment favors detention).

Third, Evans is facing a large penalty if convicted.   Combing the mandatory minimums of Count 4 and Count 6 in the Indictment, Evans faces a minimum of fifteen years in prison.   Such large penalties, per the Sixth Circuit, increase the risk of nonappearance. *United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (observing that "significant penalties," such as a maximum of 20 years in prison, "provide a strong incentive to flee").

Fourth, Evans has a substantial substance use disorder by his own admission. He is open to seeking treatment and help, but his prior use disorder also adds to the nonappearance calculus. *See United States v. Valentin-Cintron*, 656 F. Supp. 2d 292, 296 (D.P.R. 2009) ("As a frequent drug user defendant constitutes a 'flight risk.'") (citing THE FEDERAL BAIL AND DETENTION HANDBOOK and S. REP. NO. 225, 98th Cong. 1st Sess. 23, nn. 66, 68 (1983)).

Fifth, Evans is willing to use aliases to avoid capture. Such actions, independent of other circumstances, also indicate a strong nonappearance risk. *United States v. Vysniuaskas*, No. 10-20717, 2011 WL 5433960, at *9 (E.D. Mich. Nov. 9, 2011) (citing as a flight risk indicator the defendants' "use of aliases allowed [that] them to avoid detection by law enforcement"); *United States v. Aleman-Duarte*, No. 3:19-cr-149, 2020 WL 236870, at *4 (concluding that the "Defendant's use of [an] alias reveals that he is a serious flight risk") (collecting supportive cases).

Sixth, and most damning, Evans violated prior conditions and fled. Although counsel for Evans says he has since learned his lesson, the Court cannot ignore that Evans failed to charge his electronic monitoring device after repeated warnings by Clark County Pretrial Services. The Court cannot ignore that Evans cut his electronic monitoring device, fled, and was only detained after arrest on another offense. Evans notes that he fled to Michigan because he wanted to attend his mother's funeral. The Court has sympathy for Evans in the loss of his mother. However, Evans not only cut the unit, but he remained on the run for the next three months following the funeral until his arrest in April.

The cumulative and persuasive arguments by the United States meets it preponderant burden to establish Evans is a risk of nonappearance. Even if the Court were to fashion some conditions, the Court has little confidence Evans would abide by those conditions. The motion of the United States for detention is granted.

## B.   RISK OF DANGER

Evans likewise successfully rebutted the presumption of detention as to his risk of danger to the community in large part due to his lack of criminal history prior

the current offense in addition to his personal characteristics and background.  The Court finds that these considerations are sufficient to meet Evans's low production burden, overcoming the detention presumption as to danger.  *See Stone*, 608 F.3d at 945; *see also Hernandez*, 2002 WL 1377911, at *2 (requiring "probative, credible evidence to rebut the presumption").

However, the BRA factors ultimately weigh in favor of detention and the Court does not find that any conditions or combination of conditions will effectively address the appreciable danger of continued drug trafficking activity.  For the reasons discussed below, the Court finds that the United States has shown by clear and convincing evidence that danger-based detention is required.

1.   <u>Nature and Circumstances of the Offense</u>

The first BRA factor is the "nature and circumstances of the offense charged, including whether the offense . . . involves a . . . controlled substance, [or] firearm[.]" 18 U.S.C. § 3142(g)(1).   The allegations here, even per Evans, are serious and daunting.  Evans was allegedly trafficking in just a single week more than 250 grams of nearly pure acetylfentanyl and over 150 grams of methamphetamine.  And he was doing this (or at least on the final controlled purchase) while using a firearm.

Both the nature of the offense—a presumption drug trafficking case and use of a firearm in furtherance of drug trafficking—and the surrounding circumstances heavily favor Evans's detention.  The BRA manifestly signals Congressional belief in the inherent, exceptional dangerousness of the at-issue offenses.  And as discussed already, the detention presumption stemming from them "does not vanish simply

8

because a defendant comes forward with evidence to rebut it. Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class [of crimes].'" *United States v. Lattner*, 23 F. App'x 363, 364 (6th Cir. 2001) (quoting *United States v. Martir*, F.2d 1141, 1144 (2d. Cir. 1986)).  Drug trafficking is, in and of itself, an offense that poses a serious danger to the community.  *Stone*, 608 F.3d at 955 n. 6.  Thus, the presumption persists as a pro-detention consideration and, overall, this factor firmly favors detention.

### 2. <u>Weight of the Evidence of Dangerousness</u>

The second factor—the weight of the evidence of a person's dangerousness—goes only to the likelihood that the defendant will pose a danger to the community; it is not a pretrial determination of guilt.  *Stone*, 608 F.3d at 948.  In weighing the strength of the evidence, the district court may not modify or limit the defendant's presumption of innocence.  18 U.S.C. § 3142(j).

The facts alleged in the Indictment, the testimony offered by Trueblood, and the United States' proffer constitute very serious allegations that Evans was trafficking in a volume of drugs and quality of drugs that are very dangerous.  The fact that law enforcement also found a firearm with Evans when he was arrested only adds to the danger element.  *United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (observing that the "sale of drugs [ ] establish[es] a significant danger" and "[t]he addition of guns to the equation" would only increase it); *United States v. Taylor*, 289 F. Supp. 3d 55, 64 (D.D.C. 2018)

(observing that "the combination of the distribution of drugs and the illegal possession" of firearms presented a serious danger to the community).

Moreover, the weight of the dangerousness is aggravated by the fact that Evans, three months after absconding from the underlying state charges, was arrested again for trafficking in methamphetamine.  In other words, even when facing substantial state charges, Evans returned to trafficking with little hesitation.

These facts all heavily favor detention, as the risk of continued trafficking falls squarely within the BRA's danger concept.  *See United States v. Holden*, No. 17-CR-33-JMH-1, 2017 WL 1362684, at *2 (E.D. Ky. Apr. 12, 2017) (mentioning that the dangers associated with drug trafficking "leading to near fatal overdoses cannot be overstated").  Accordingly, the second factor strongly favors Evan's pretrial detention.

### 3.   <u>History and Characteristics of the Person</u>

The third BRA factor considers the history and characteristics of the person.  *See* 18 U.S.C. § 3142(g)(3).

At first glance, this factor largely favors release, due to Evans's limited criminal history and absence of any prior felony offenses.  However, the Court must also consider "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law."  28 U.S.C. § 3142(g)(3)(B).  Admittedly, the factor does not perfectly square with Evans's behavior.  And yet, the Court notes that Evans's choice to abscond and re-engage in trafficking activity would support the same danger indicator as 3142(g)(3)(B) so fears.

On balance, this factor is mixed and does not meaningfully weigh in favor of detention or release.

### 4. <u>Nature and Seriousness of the Danger</u>

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). In the context of drug trafficking, the Court considers Evans's potential danger to the community to be grave. *See, e.g., United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (observing that the "sale of drugs [ ] establish[es] a significant danger"); *United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004) ("[T]he danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community[.]").

The quantities and purities of acetylfentanyl alleged to be distributed coupled with the firearm aggravate the danger associated with Evans's conduct. *See United States v. Bland*, No. CR PWG-15-141, 2020 WL 1904742, at *3 (D. Md. Apr. 16, 2020) (concluding that "given the sheer quantity of narcotics Defendant has shown that he is capable of obtaining and distributing, Defendant poses a significant danger to the safety of the community"); *United States v. Holden*, No. 17-CR-33-JMH-1, 2017 WL 1362684, at *2 (E.D. Ky. Apr. 12, 2017) (noting that the dangers associated with drug trafficking "leading to near fatal overdoses cannot be overstated"). One district court noted that a defendant's alleged involvement in the distribution of "a large quantity of narcotics cuts strongly against his motion for release pending trial" because "[t]he seriousness of the crimes alone . . . allows the court to draw the inference that defendant will simply continue his alleged

narcotics activity if released." *United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009) (collecting supportive cases).  Here, with Evans, his actions have already indicated that is exactly what he would do.

In sum, the United States has shown by clear and convincing evidence that the BRA factors weigh in favor of finding that Evans poses a significant danger to the community.  Given the nature of the allegations, the Court cannot be reasonably assured that Evans will not resume involvement with drug trafficking if he is released.  Put differently, the Court cannot identify a condition or combination of conditions that could reasonably ensure the safety of the community if Evans were to be released pending trial.  *See, e.g., United States v. Nova*, No. CR 16-060-02 S, 2016 WL 6471205, at *2 (D.R.I. Nov. 1, 2016) (finding that electronic monitoring and home detention conditions would not be effective to mitigate danger where the defendant could easily participate in the charged drug distribution scheme from his home).  Accordingly, the BRA requires that Evans be detained pending trial based on his potential danger to the community.

## IV.  <u>CONCLUSION</u>

Ultimately, the Court finds that the United States has proved by a preponderance of the evidence that no conditions could ensure Evans's future appearance at Court proceedings.  Moreover, the Court finds that the Government has shown—by clear and convincing evidence—that no condition or combination of conditions could reasonably assure community safety.  Accordingly, the Court **GRANTS** the United States' oral detention motion.   As the BRA mandates in this case, Evans shall remain in custody pending trial.

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this 8th of September, 2023.



MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY

**13**